UNITED STATES ex rel. Henry H. STAPLES, Petitioner-Appellant,

v.

Frank J. PATE, Warden, Illinois State Penitentiary, Joliet, Illinois, Respondent-Appellee.

No. 14444.

United States Court of Appeals Seventh Circuit.
May 28, 1964.

---

Thomas P. Sullivan, Diane I. Lunquist, Chicago, Ill., for petitioner-appellant.

William G. Clark, Atty. Gen., Richard A. Michael, Asst. Atty. Gen., Chicago, Ill., Raymond S. Sarnow, Edward A. Berman, Asst. Attys. Gen., of counsel, for respondent-appellee.

Before HASTINGS, Chief Judge, and DUFFY and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing Staples' petition for a writ of habeas corpus. The District Court's findings of fact, conclusions of law and opinion appear at 222 F.Supp. 998.

About 11:30 p. m. on the evening of October 11, 1942, Staples' wife was killed, death resulting from blows from an axe. About 7:30 a. m., October 12, East St. Louis police officers arrested Staples. They took him to a funeral parlor to view his wife's body. Then, while in a police car with Officer Sherrod driving and Officer Hudson in the rear seat with Staples, he was told he was the prime suspect as to the cause of his wife's death. The officers said they would like to look through Staples' house. Staples told them that they could make the search. They drove to Staples' home where Staples unlocked the back door so that the officers could enter.

The officers searched three rooms. Behind the stove in the kitchen they found a bloody axe. Behind the refrigerator they found a blood-stained white shirt. In a dresser drawer in the bedroom they found a bloody pair of pants.

The police officers took these articles and Staples to the police station. Staples was questioned from 1 p. m. to about 4 p. m. At first, Staples maintained he had no knowledge of his wife's killing. When asked about the blood on the axe and clothes, Staples said it was from a pig that he had recently killed. The police suggested they would send the articles to a chemist to have the blood analyzed. Then, unaccompanied by any physical coercion or threats, Staples admitted killing his wife and he signed a written confession. The next morning, Staples was brought before a magistrate.

On December 18, 1942, petitioner was indicted for murder by the grand jury of St. Clair County. When arraigned a few days later in the Circuit Court of that County, he pleaded not guilty. On January 13, 1943, while represented by privately employed counsel, petitioner withdrew his plea of not guilty and entered a plea of guilty to murder. The presiding judge admonished petitioner as to the consequences of his plea but he persisted therein. After a hearing on the facts, petitioner was sentenced to 99 years' imprisonment.

The record discloses that Staples made repeated efforts in the State courts to have his conviction set aside. There were two petitions for writs of habeas corpus directed to the Supreme Court of Illinois; four such petitions to the Circuit Court of St. Clair County, and two such petitions to the Circuit Court of Randolph County. All were unsuccessful.

In February 1956, petitioner was the subject of a post conviction hearing in the Circuit Court of St. Clair County before Judge Spivey. He was represented by court-appointed counsel. At this hearing, petitioner made some extreme claims such as that five police officers had beaten him with blackjacks on three successive nights after his arrest; that he had pleaded not guilty but the court had entered his plea as guilty; that he had demanded a jury trial but this was denied to him.

At the same hearing, a number of witnesses testified for the state. Their testimony showed that at no time had petitioner been threatened or coerced; that he had voluntarily entered the plea of

guilty and at no time had be requested a jury trial.

Judge Spivey ruled petitioner had been represented by competent counsel and that he had received regular and ordinary courtroom treatment and that the plea he had entered was that of guilty. This decision was affirmed on May 23, 1958 in an unreported order of the Supreme Court of the State of Illinois (No. 1978), cert. den. 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 84.

In the District Court, petitioner asked for a hearing on his petition for habeas corpus. He received such a hearing and was personally present throughout. He was represented by able counsel. Petitioner did not take the stand. In fact, nowhere in this record since petitioner first changed his plea of not guilty to guilty, has petitioner claimed that he did not cause his wife's death by striking her with blows from an axe. However, the record does disclose that in one proceeding in the State court, Staples claimed he acted in self defense.

The testimony in the District Court consisted solely of the testimony of two witnesses. One was the officer who searched petitioner's home. The other was the assistant state's attorney who handled the original prosecution. There was also introduced the common law record of Staples' original conviction and the record of Staples' post conviction proceeding in the Circuit Court of St. Clair County in 1956.

There was no evidence whatsoever at the District Court hearing that petitioner's plea of guilty was not voluntary and understandingly made. There was no testimony that any prior police misconduct was, in any way, involved in the plea. If such were the case, petitioner was present at the hearing and could have supplied such information, if true.

The District Court filed detailed findings of fact (20 in number) and conclusions of law. The Court concluded that under the law in this Circuit, a petitioner for a writ of habeas corpus who at his trial was represented by counsel of his own choosing, and after being duly admonished by the Court, enters a plea of guilty, is not entitled to a writ of habeas corpus, although prior thereto he may have been the victim of an unconstitutional search and seizure, and a delay in being taken before a magistrate, and that as a result thereof, he might have been induced, at least in part to confess the crime.

In the case at bar, petitioner concedes that a voluntary and intentional plea of guilty constitutes a waiver of objections to prior proceedings, including prior violations of the defendant's rights. United States v. French, 7 Cir., 274 F.2d 297; United States v. Kniess, 7 Cir., 264 F.2d 353. However, petitioner claims that this rule does not apply where the plea of guilty is induced by prior police conduct, and he claims that his plea of guilty was so induced.

In the instant case, there is no evidence whatsoever that petitioner's plea of guilty was not voluntarily and understandingly made. There is no testimony that any prior police misconduct in any way influenced the plea. The District Court suggested the plea of guilty probably was induced in part because petitioner, charged with a capital offense, hoped for some leniency in the sentence to be imposed.

There is no finding in this case that absent the so-called tainted evidence, the defendant would not have pleaded guilty. Furthermore, in United States v. French, supra, the petitioner contended that he would not have pleaded guilty except for the inadmissible confession. Nevertheless the Court held his plea of guilty was conclusive if understandingly and voluntarily made.

In Watts v. United States, 107 U.S. App.D.C. 367, 278 F.2d 247, petitioner attempted to have his guilty plea set aside because he alleged it was induced by an inadmissible confession of a confederate. The Court said, 278 F.2d at pages 249–250: " * * * We have held that an illegal arrest or confession rendered during a period of illegal de-

tention does not subject a sentence based upon a guilty plea to Sec. 2255 attack. * * * However, when the accused elects to plead guilty, even though seemingly induced to do so as a result of seeing the inadmissible confession of a confederate, the plea is not involuntary. * * * "

Pertinent is United States v. Sturm, 7 Cir., 180 F.2d 413, cert. den. 339 U.S. 986, 70 S.Ct. 1008, 94 L.Ed. 1388. We pointed out that petitioner claimed his plea was not voluntarily made because of an alleged misapprehension of his rights. We stated, 180 F.2d page 416: " * * * The conclusive answer to this is that defendant, when he signed waivers of indictment and venue, and at the time of his arraignment and plea of guilty, was represented by counsel of his own choice * * *. This circumstance, we think, compels us to reject the defendant's contention that his plea was not made voluntarily and with knowledge of his legal rights."

In the case at bar, when the defendant withdrew his plea of not guilty and entered his plea of guilty, he was accompanied by counsel of his own choosing. As in Sturm, we cannot say that under such circumstances, his plea was not voluntarily made.

In the recent case of United States ex rel. Stacey v. Pate, 7 Cir., 324 F.2d 934, a state prisoner filed a petition for a writ of habeas corpus in a federal district court. He had been convicted of murder by stabbing a woman. The officers asked his permission to search his house. He said "Go ahead." Two officers went to his home and Stacey's wife, upon request, gave one of them a blood-stained shirt. Shortly after Stacey saw the shirt, he confessed. We held in that case the shirt was voluntarily given, and the action of the officers did not constitute a search.

In the case at bar, we do not reach the question of whether the search of Staples' house was unlawful. Conceding for the sake of argument that it

was, under the circumstances of this case we hold the plea of guilty was voluntarily and understandingly made.

The Court is greatly indebted to Thomas P. Sullivan and Diane I. Lunquist of the Chicago bar for the splendid services they have rendered as court-appointed counsel on this appeal.

The judgment of the District Court dismissing the petition for a writ of habeas corpus was correct, and the judgment is

Affirmed.